UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SCOTT LANE, on his own behalf and on behalf of his minor children, S.L. and M.L.; AND SHARON LANE, on her own and on behalf of her minor child, C.C.,<br><br>                      Plaintiffs,<br><br>– Versus –<br><br>SABINE PARISH SCHOOL BOARD,<br><br>                      Defendants. | NUMBER: 5:14-cv-00100-EEF-KLH<br><br>JUDGE: Hon. Elizabeth E. Foote<br><br>MAGISTRATE JUDGE: Hon. Karen L Hayes |

**CONSENT DECREE AND ORDER**

## INTRODUCTION

On January 22, 2014, Plaintiffs filed a Verified Complaint asserting claims pursuant to 42 U.S.C. §1983 against Sabine Parish School Board (the "Board"); Sara Ebarb, in her official capacity as Superintendent of the Sabine Parish School Board; Gene Wright in his official capacity of Principal of Negreet High School; and Rita Roark, in her official capacity as a teacher at Negreet High School. Scott Lane sued on his own behalf and on behalf of his minor children, S.L. and M.L. Sharon Lane sued on her own behalf and on behalf of her minor child, C.C. In conjunction with, and contingent upon, the Court's entry of this Consent Decree, Plaintiffs have agreed to dismiss their official-capacity claims against Ebarb, Wright and Roark, who shall each sign and return to Plaintiffs a copy of this Consent Decree once entered by the Court.

Plaintiffs' Complaint alleges that the Board has a custom, policy, and practice of violating the Establishment Clause by, among other actions, incorporating official prayer into myriad school events; proselytizing students; subjecting students to religious iconography via displays in classrooms, hallways, and other locations; teaching religious doctrine as fact; distributing religious materials to students; and denigrating the Buddhist faith of Plaintiffs C.C. and Sharon Lane.

The Board denies any wrongdoing and specifically disputes the allegations directed against Roark, Wright and Ebarb.

Religious liberty, as embodied by the Free Exercise Clause and the Establishment Clause of the First Amendment, and free speech are hallowed constitutional rights to which all are entitled. To ensure that these rights of Plaintiffs and all students, parents, and families are protected, as well as to avoid further costly and protracted disputes, the parties have agreed voluntarily to entry of this Consent Decree and Order in settlement of all claims in the Complaint. Accordingly, the parties respectfully submit this Consent Decree for entry by the Court.

## ORDER

**BY THE CONSENT OF THE PARTIES, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1. Some of the Board's District-wide practices and customs alleged in the Complaint, if proven, would violate the Establishment Clause of the First Amendment to the U.S. Constitution. Some of the Board's practices and customs (a) endorse and promote religion, (b) have the purpose or effect of advancing religion, and/or (c) coerce religious exercise either directly or indirectly.

2. The Clerk shall enter judgment in favor of the Plaintiffs. In adopting this Consent Decree, the Court has ensured that it comports with the First Amendment to the U.S. Constitution.

### Definitions

3. The following definitions shall apply to this Order. In construing these definitions, the singular shall include the plural and the plural shall include the singular:

(a) "Club" means a noncurricular student group that is recognized by the School District and that qualifies through the five safe-haven provisions (20 U.S.C. §4071 (c)) for protection under the Equal Access Act.

(b) "Prayer" means a communication (written or audible) with a deity, including, but not limited to, a benediction, an invocation, the Lord's Prayer, or otherwise calling upon a deity to offer guidance, assistance, or a blessing. Accordingly, "Prayer" does not include customary, polite expressions and greetings, including "God Bless You" or "Thank Heavens," or a student's religious expression responsive to a legitimate academic class assignment. "Prayer" also does not include a moment of silence, provided that School Officials do not direct, encourage, or imply that students should use the moment of silence for Prayer.

(c) "Religious Service" means a convocation for a religious purpose, including, but not limited to, baccalaureates, religious youth group meetings or events, worship services, Bible study, and religious rallies, festivals, and concerts.

(d) "Religious Title" means Benediction, Invocation, Prayer, Blessing, Inspirational Message, Sermon, Devotional Pledge, Bible Reading, Devotion or any other title that in any way relates to Prayer.

(e) "Religious Venue" means a property, facility, building, or place that is maintained and controlled by or for a religious body that is organized, in whole or in part, to sustain public worship.

(f) "School District" means the Sabine Parish School District.

(g) "School Event" means any activity or happening (1) at a School Board facility or (2) sponsored, planned, conducted, or supervised by a School Official acting in his or her Official Capacity. It includes, but is not limited to, graduation or grade-promotion ceremonies; awards programs or induction ceremonies; assemblies or other school-day programs; athletic practices and competitions; rehearsals and performances; class instructional times; and Club meetings or events. However, each of the following excepted activities is not a School Event:

(i) A student religious Club meeting or event, if all School Board employees and agents are present at the meeting or event only in a "nonparticipatory capacity," as used in the Equal Access Act;

(ii) An activity at a School Board facility, if (I) it is outside the presence of School District students and (II) no School Official acts in his or her Official Capacity; and

(iii) An activity at a School Board facility that is used by a third party pursuant to a neutral, limited public forum established by the School Board to govern the use of School Board facilities, if (I) the terms of usage (including rent) are consistent with the terms applicable to other third-party users, (II) the use does not involve any School Official acting in his or her Official Capacity, and (III) the use does not take place during school hours. This exception does not apply and an activity will be deemed a School Event if the activity takes place (A) during instructional time, (B) when the majority of school employees assigned to the subject school facility are contractually obligated to be present, or (C) during the transitional period before or after school when students are embarking or disembarking from school buses or private transportation. School Officials may supervise students between instructional time and the third-party use period if the supervision is neutral with respect to religion.

(iv) School Board Meetings, both regularly and specially conducted, insofar as Plaintiffs here have not challenged any practices at Defendant's School Board meetings.

(h) "School Official" means the Board and its officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, but only to the extent such a person acts in his or her Official Capacity or is in active concert or privity or participation with the Board. Outside organizations that receive no support from the Board, do not receive remuneration of any kind from the Board, are not controlled by the Board, and are not given preferential treatment or access (e.g., to sell wares) by the Board are not School Officials when they satisfy these requirements.

(i) "Official Capacity": This Consent Decree regulates only "official capacity" conduct by District employees. It does not address the conduct of school employees in any context other than their official capacity. A person acts in his or her "Official Capacity" when (1) performing official duties or furthering the work of the District or School Board or (2) acting under or with a power or authority granted by virtue of employment by or association with the District or School Board. However, where the only power or authority the School Official exercises is the authority to be present at a District School Board facility and the School Official

is not interacting with or in the presence of a student, then the School Official is not in his or her Official Capacity by virtue of subsection (i)(2).

### Equal Access Act

4.  No provision in this Order is intended to supplant or alter the rights afforded student clubs by the Equal Access Act. School Officials shall comply with the Equal Access Act. 20 U.S.C. §4071 et seq.

### Permanent Injunction

5.  *Prayer at School Events.* School Officials are permanently enjoined from promoting, advancing, endorsing, participating in, or causing Prayers during or in conjunction with School Events for any school within the School District:

    (a) School Officials shall neither offer nor participate in a Prayer during or in conjunction with a School Event.

    (b) School Officials shall prohibit non-student third parties (including, but not limited to, clergy or other religious leaders) during or in conjunction with a School Event from offering a Prayer addressed to an audience as part of the event or program, soliciting a Prayer from anyone as part of the event or program, or promoting a religious belief to anyone as part of the event or program.

    (c) School Officials shall not include Prayer, whether or not it is noted in a printed program, during or in conjunction with a School Event. School Officials shall not give authorization to a group of students, a student body (e.g., through an election), or third parties to include Prayer, whether or not it is noted in a printed program, during or in conjunction with a School Event.

    (d) School Officials shall not encourage, solicit, or invite any person, either implicitly or explicitly, to deliver or offer a Prayer during or in conjunction with a School Event. School Officials shall not set aside a time for Prayer during or in conjunction with a School Event. However, this provision does not bar School Officials from including a moment of silence in School Events, provided that School Officials do not direct, encourage, or imply that students or others should use the moment of silence for Prayer.

    (e) School Officials shall prohibit any segment of a School Event from having a Religious Title. School Officials shall not give any segment of a School Event a Religious Title. School Officials shall not permit students, student groups, or third parties to give a segment of a School Event a Religious Title.

(f)     If School Officials select persons to make an address during or in conjunction with School Event, they shall do so by a selection process that is neutral to religion and in compliance with a written policy.

(g)     To the extent that School Officials permit a person during or in conjunction with School Events to give an address that a School Official shapes, reviews, or edits for content, substance, message, style, or theme, then School Officials shall ensure the person's address excludes Prayer.  Nothing in this provision shall relieve School Officials of their obligation to prohibit or curb efforts by third parties to introduce Prayer during a School Event or otherwise comply with Section 5 of this Order.

6.   *Religious Services.*   School Officials are permanently enjoined from planning, organizing, financing, promoting, or otherwise sponsoring in whole or in part a Religious Service:

(a)     School funds shall not be used to plan, organize, finance, promote or otherwise sponsor a Religious Service, including, but not limited to (1) printing programs for a Religious Service, (2) compensating or reimbursing expenses for a speaker at a Religious Service, or (3) paying for overhead costs (lighting, heating, cooling, janitorial, etc.) for a Religious Service. Subsection (a)(3) shall not apply when School Board facilities are used for a Religious Service by a third party pursuant to a standard facility use agreement, on terms and schedules (including rental rates) that are applicable to all applicants.

(b)     School Officials in their Official Capacity shall not attend or be tasked with official responsibilities at any Religious Service, except serving as the faculty advisor to supervise a Club meeting or event. School Officials shall not monitor behavior of students or require them to conform to any standards at any Religious Service, including delineating proper dress at baccalaureate, except to supervise a Club meeting or event. School Officials shall not plan or organize any Religious Service on school time or do so by using School District equipment or supplies.

(c)     School Officials, during or in conjunction with a School Event, shall not require or encourage students to attend any Religious Service, including baccalaureate, church services and student religious Club meetings.  School bands, choirs, and military guards shall not perform as part of a Religious Service, including baccalaureate and church services.   Provided however, that individual students, in their personal capacities, may not be prohibited from such performance.

(d)     No Religious Service commemorating the graduation or grade-promotion of a class of students shall be comprised, led, or directed by School Officials in their Official Capacity.

(e) School Officials shall not require employees to attend any Religious Service, including baccalaureate. Nothing herein restricts a School Board employee or agent's non-Official Capacity promotion of, participation in, or speech or conduct during, a private Religious Service, including baccalaureates and church services.

7. *School Events at Religious Venues.* School Officials are permanently enjoined from holding School Events for any school within the School District at a Religious Venue when an alternative venue is reasonably suitable that is not a Religious Venue. When it is reasonably necessary for a School Event to be held at a Religious Venue, the secular justification for the use of the Religious Venue shall be documented pursuant to subparagraph 7(a).

(a) If a School Event is held at a Religious Venue, School Officials shall document in writing before the event takes place the following: (1) the Religious Venue's physical address, (2) the Religious Venue's owner and contact information, (3) the owner's affiliation with a house of worship or congregation, if any, (4) the nature of the School Event, the expected number and category (students, School Officials, and others) of attendees, and the available parking, (5) the venue for the last three years for past school events of this nature for this school, (6) the compensation that will be paid to use this Religious Venue, (7) the compensation typically paid to use this Religious Venue, if known, (8) the distance from the applicable school, whose event this is, and the Religious Venue, (9) the identity of the School Officials involved in selecting the Religious Venue, and (10) a certification that no other venue that is not a Religious Venue would be reasonably suitable for this School Event. The written documentation shall be verified by the signature of at least one School Official. School Officials shall transmit a copy of this written documentation to the superintendent's office or his or her delegatee for maintenance and review by the public. The use of a Religious Venue for a School Event may be done only with the approval of the Superintendent or his or her delegatee.

(b) Notwithstanding the foregoing and without complying with this procedure, School Officials may hold School Events at a venue, facility, or property owned or maintained by (1) another School Board or School (e.g., an opposing team in a football game); (2) a state or any political subdivision or agency thereof; or (3) any Non-Religious Venue.

8. *Promotion of Personal Religious Beliefs.* The District and School Board are permanently enjoined from permitting School Officials at any school within the School District to promote their personal religious beliefs to students in class or during or in conjunction with a School Event.

(a) School Officials shall not participate in any way in a Prayer with students during or in conjunction with instructional periods or a School Event. During or in conjunction with a School Event, School Officials shall not offer a Prayer, recite a Prayer alongside or with students, bow their heads or otherwise posture in a manner that is likely to be perceived as an endorsement of the Prayer, or kneel or join hands with students. A School Official's remaining

still and silent with hands folded, as a sign of respect, during a Prayer shall not alone constitute an endorsement.

(b) School Officials shall be present at meetings or events of student religious Clubs only in a non-participatory capacity. School Officials shall not lecture, proselytize, pray, or preach at meetings or events of student religious Clubs.

(c) School Officials shall not read or assign readings from a sacred text or a sermon absent a legitimate non-religious, educational objective. School Officials shall not cite to the Bible or any sacred text as authority for historical or scientific fact to students during or in conjunction with a School Event.

(d) School Officials, during or in conjunction with a School Event, shall not solicit, discourage, or encourage students to engage in religious activity or attend a Religious Service. School Officials, during or in conjunction with a School Event, shall not permit non-student third parties to solicit, discourage, or encourage students to engage in religious activity or attend any Religious Service.

(e) School Officials shall not orally express personal religious beliefs or affiliations to students during or in conjunction with instructional time or a School Event. School Officials shall not express personal religious beliefs or affiliations to students through written or symbolic means (whether placed on a classroom or hallway wall, erected on a classroom floor, or otherwise attached or placed on the District's tangible property, or included on their Teacher Webpages or similar teacher-specific webpages posted on or directly navigable from a District school's webpage). However, jewelry on the School Official's person or clothing or religious articles worn by the School Official (e.g. a yarmulke and a cross necklace) are permissible. Nothing herein shall prohibit a teacher from using religious symbols, articles, or books for a non-religious educational reason. School Officials shall not promote or state their personal religious beliefs or religious affiliations on the District's website, their Teacher Pages, or similar teacher-specific pages posted on or directly navigable from a District school's webpage.

(f) School Officials shall prohibit nonreligious Clubs and organizations from having an official position in the organization of "chaplain" or one whose responsibilities are to serve as a religious leader, counselor, or guide. Nor shall School Officials recognize such a position.

9. *Distribution of Materials in the Schools.* Private, non-school sponsored materials may be made available to students as part of a neutral limited or other public forum that may be used by outside groups to distribute materials.

(a) Charity, civic, or other non-profit, non-political organizations may make available materials for pickup by students at one location designated by School Officials in each District school. The designated location shall be easily accessible to students, but shall not be in a

location where groups of students formally gather for a particular purpose (e.g., the cafeteria, or playground). Under no circumstances may the designated location be a classroom.

(b)  To avoid coercion, proselytizing, or the appearance of endorsement, under no circumstances may individuals or representatives of non-school agencies or organizations interact personally with students as part of any distribution at the designated location.

(c)  School Officials shall refrain from specially promoting or announcing, to the exclusion of all other materials, the availability of an individual private organization's materials.

(d)  School officials shall require clear disclaimers of school endorsement to be posted at the designated location.

(e)  This section shall not be deemed to limit or restrict the freedom of students, acting on their own, to distribute religious literature to a fellow student when conducted in a materially non-disruptive manner.

(f)  Nothing herein prohibits School Officials from establishing a neutral limited or other public forum, like a "flyer system," for the limited purpose of allowing charity, civic, or other non-profit, non-political organizations to announce – as through flyers sent home to parents – events and activities sponsored by those organizations.

(g)  Nothing herein prohibits School Officials from authorizing the distribution of non-religious materials in connection with a curricular or educational program presented or conducted in conjunction with a School Event (e.g., drug and alcohol education assemblies).

10.  *Denigration of Religion.*  School Officials shall not denigrate any particular faith, or lack thereof, or single out any student for disfavor or criticism because of his or her particular faith or religious beliefs, or lack thereof.

11.  *Retaliation.*  School Officials are permanently enjoined from taking retaliatory action against Plaintiffs or any member of their family for bringing this lawsuit or otherwise objecting to unconstitutional practices.

## Enforcement

12.  The Board shall provide a copy of this Order to all current School Officials throughout the School District. The Board shall provide a copy of this Order to all persons who later become School Officials. This Order shall be disseminated in the same manner as School Board Policies and Procedures and shall be maintained in any electronic or paper policy manual. This Order shall be included in the District's "Code of Student Conduct" or substantially equivalent publication.

13.  The Board shall establish and maintain a process for the investigation of complaints regarding School Officials' promotion of religion. School officials shall not prohibit or

discourage any complainant from contacting the ACLU of Louisiana or the ACLU Program on Freedom of Religion and Belief to report potential violations of the Consent Decree.

14. *Notice Period.* Board shall have a period of 30 days from the date of entry of this Order to notify School Officials of this Consent Decree and Order and inform them of their obligations thereunder. After the 30-day educational period expires, School Officials who violate this Order may be subject to contempt proceedings or other judicial relief.

15. *Faculty Training and Education.* Beginning in the Fall of 2014, the Board will provide training, conducted by an attorney, to all certified or professional Board employees, with the exception of bus drivers, on the subjects of the Board's legal obligations under the Consent Decree and under current First Amendment jurisprudence. The training initially will be provided to all certified or professional Board employees, and thereafter, to all certified or professional newly hired employees. In addition, refresher courses shall be provided to all certified or professional employees upon major developments in First Amendment jurisprudence. This training shall also educate Board employees on the psychological and developmental impact of religious discrimination on students. Prior to conducting the initial training, and prior to conducting refresher courses on major developments in First Amendment jurisprudence, the attorney and other experts conducting the training shall consult with the ACLU of Louisiana and the ACLU regarding the content and nature of proposed training materials and documents.

16. This Order is designed to ensure that the School District's practices and policies do not violate, either currently or in the future, the First Amendment rights of students in the School District. The parties to this Order shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order before bringing such matters to the Court for resolution. On Plaintiffs' counsel's request, counsel for the School District shall provide information reasonably available to him so that Plaintiffs' counsel may ensure School Officials' compliance with this Order and evaluate, in context, the Board's guidance and interpretation of this Order and their enforcement efforts with respect to this Order. However, in the event that the Board either fail to perform in a timely manner any act required by this Order or act in violation of any provision of this Order, each Plaintiff or any affected student – present or future – who alleges a violation may contact the Plaintiffs' counsel. As may be appropriate, counsel may then move the Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance or non-performance of certain acts.

17. This Court retains jurisdiction of this case to enforce the terms of this Order.

### Additional Relief

18. *Nominal Damages.* In connection with the Judgment entered in favor of the Plaintiffs and against the Board, Board shall pay Plaintiffs Scott Lane, Sharon Lane, C.C., S.L., and M.L.

nominal damages in the amount of $1.00 each. These nominal payments recognize the injury caused to Plaintiffs by the Board's custom and practice of promoting religion.

19. *Compensatory Damages.* In connection with the Judgment entered in favor of the Plaintiffs and against the Board, Board shall pay Plaintiff Sharon Lane $4,000 to compensate her for costs associated with the transport of C.C. to Many Junior High School.

20. *Busing.* In connection with the Judgment entered in favor of the Plaintiffs and against the Board, the Board shall provide bus transportation service to C.C. so that he may continue to attend Many Junior High School and Many High School. The Board shall provide this service until C.C. graduates from Many High School. Bus pickup shall occur at C.C.'s address at a time no earlier than 6:00 A.M., and drop-off shall occur at C.C.'s address at a time no later than 4:45 P.M.

21. *Attorneys' Fees, Costs, and Litigation Expenses.* Pursuant to (a) 42 U.S.C. §1988, (b) Federal Rule of Civil Procedure 54, and Local Civil Rules 54.02 and 54.03, this Court concludes that the Plaintiffs are the prevailing parties on all claims filed in this matter. Accordingly, the Court concludes that the Board is liable for the Plaintiffs' reasonable attorneys' fees, costs, and litigation expenses in accordance with applicable law. Plaintiffs are awarded $40,000 in costs and attorneys' fees, to be paid by Board no later than 14 days after the entry of this Order.

22. Nothing in this Order will be construed to limit any party's right to enforce this Order according to its terms. If any court of competent jurisdiction determines that any provision contained in this Order, or any part thereof, cannot be enforced, the parties agree that such determination shall not affect or invalidate the remainder of the Order.

23. This Order shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors, and assigns.

24. After 10 years from the date of entry of this Order, one or both parties may contact the Court to discuss the need for further continuation of this Order.

25. If this Order does not expressly prohibit conduct, then it is permitted as authorized by law.

SO ORDERED, this 14th day of March, 2014

_____
Elizabeth E. Foote, U.S. District Judge

11

By their signatures on this and the following pages, the undersigned parties agree to, and request the entry of, this Order:

PLAINTIFF SCOTT LANE

______________________

PLAINTIFF M.L.

______________________

PLAINTIFF S.L.

______________________

PLAINTIFF SHARON LANE

______________________

PLAINTIFF C.C.

______________________

DEFENDANT SABINE PARISH SCHOOL BOARD

______________________

By ______________________

By their signatures on this and the following pages, the undersigned parties agree to, and request the entry of, this Order:

PLAINTIFF SCOTT LANE

_____

PLAINTIFF M.L.

_____

PLAINTIFF S.L.

_____

PLAINTIFF SHARON LANE

_____

PLAINTIFF C.C.

_____


DEFENDANT SABINE PARISH SCHOOL BOARD

_____
By *J. R. Martin*
*President, Sabine Parish School Bnd.*